## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**PAMELA HOLMES**, as Administrator
of the Estate of Normiez N. Reeves;
5728 Shoals Place Trail
Atlanta, GA 30349

and

**PAMELA HOLMES**,  as Next Friend
and Temporary Legal Guardian of Mahkai
M. Reeves, the minor son of Normiez N.
Reeves;
5728 Shoals Place Trail
Atlanta, GA 30349

and

**LISETTE WATKINS**, as Next Friend
and Mother and of CARMEN REEVES,
the minor daughter of Norman Reeves;
3336 Kenmont Lane, Apt. C

      Plaintiffs,

v.

**JONATHAN C. DENNIS,** in his
Individual Capacity;
498 Chattin Dr, Canton, GA 30115

**JORDAN HOPSON**, in his Individual
Capacity;
498 Chattin Dr, Canton, GA 30115

and

CIVIL ACTION FILE NO:

_____

*Jury Trial Demanded*

**ANGEL F. CRIOLLO-GUITERREZ,**
in his Individual Capacity;
498 Chattin Dr, Canton, GA 30115

and

**EVAN J. PANKEY**, in his Individual
Capacity;
498 Chattin Dr, Canton, GA 30115

    Defendants.

---

## COMPLAINT FOR DAMAGES

  **NOW COMES** Plaintiffs, **PAMELA HOLMES**, as Administrator of the Estate of Norman Reeves, and as Legal Guardian of Mahkai M. Reeves, the minor son of Norman Reeves, and **LISETTE WATKINS**, as the Natural Mother and Legal Guardian of CARMEN REEVES, the minor daughter of Norman Reeves, and hereby files this *Complaint for Damages* against Defendants **JONATHAN DENNIS**, **JORDAN HOPSON**, **ANGEL CRIOLLO-GUITERREZ**, and **EVAN PANKEY**, in their Individual Capacity as officers assigned to the Cherokee Multi-Agency Narcotics Squad, and show this Court as follows:

## INTRODUCTION

1. On June 13, 2022, officers from the Cherokee Multi-Agency Narcotics Squad (CMANS) arranged a "buy-bust" drug operation in Cherokee County targeting Normiez Reeves. During the encounter between Reeves and the CMANS officers, Reeves attempted to flee in his vehicle, when four officers shot 45 times into and at

Reeves as he drove away from the scene.  Suffering from multiple gunshot injuries, Reeves was transported from the scene to a hospital and later pronounced deceased.

2      This is a civil rights lawsuit filed pursuant to 42 U.S.C. § 1983, seeking general and compensatory damages for the unlawful seizure, unreasonable use of deadly force, and wrongful death of Reeves, in violation of his rights guaranteed by the Fourth Amendment to the United States Constitution.  This lawsuit also asserts Georgia state law claims for assault, battery, intentional infliction of emotional distress, punitive damages, and attorney's fees.

## JURISDICTION AND VENUE

3.      This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution as applied to the State of Georgia and its entities, officials, and employees, as well as the statutes and common laws of the State of Georgia.

4.      Because this is an action under the United States Constitution, this Court has jurisdiction under Article III of the Constitution and under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4). The relief sought is authorized by the United States Constitution and by 42 U.S.C. § 1983.

5.      This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, because they are related to his §1983 claims, over which this Court has original jurisdiction, and these claims all arise from the same case or controversy under Article III of the United States Constitution.

6.     Venue is proper in the Northern District of Georgia, Atlanta Division pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and occurrences giving rise to the claim occurred in Cherokee County, Georgia.

## IDENTIFICATION OF PARTIES

7.     Plaintiff, **LISETTE WATKINS**, as the Natural Mother and Legal Guardian of Carmen Reeves, the minor daughter of Norman Reeves, at all relevant times herein, was a citizen of the United States and a resident of Georgia, and currently resides at 5816 Paragon Point, Hope Mills, North Carolina 28438.   Plaintiff WATKINS brings this action under federal law and Georgia law for all general, special, compensatory, and permissible damages.

8.     Plaintiff, **PAMELA HOLMES**, as Administrator of the Estate of Norman Reeves, and as Legal Guardian of Mahkai M. Reeves, the minor son of Norman Reeves, at all relevant times herein, was a citizen of the United States and a resident of Georgia, and currently resides at 5728 Shoals Place Trail, Atlanta, Georgia 30349. Plaintiff HOLMES brings this action under federal law and Georgia law for all general, special, compensatory, and permissible damages.

9.     Defendant, **JONATHAN C. DENNIS**, (hereinafter "Defendant DENNIS"), at all relevant times herein, is and was a sworn deputy of the Cherokee County Sheriff's Office, assigned to the Cherokee Multi-Agency Narcotics Squad (sometimes referred to as "CMANS").  In his capacity as a law enforcement officer, Defendant DENNIS was responsible for policing Cherokee County under the color

4

and pretense of the federal and state laws as well as the ordinances, regulations, customs, and usages of the State of Georgia and Cherokee County.

10.     The actions of Defendant DENNIS that are the subject of this lawsuit were undertaken in the regular course of his employment as a deputy with the Cherokee County Sheriff's Office. Defendant DENNIS is sued in his individual capacity and is a resident and citizen of the State of Georgia and may be served with process at his personal place of residence: 101 Mill Creek Dr., Canton, Georgia 30115-6031. Jurisdiction and venue are proper.

11.     Defendant,     **JORDAN     HOPSON**,     (hereinafter     "Defendant HOPSON"), at all relevant times herein, is and was a sworn deputy of the Cherokee County Sheriff's Office, assigned to the Cherokee Multi-Agency Narcotics Squad (sometimes referred to as "CMANS"). In his capacity as a law enforcement officer, Defendant HOPSON was responsible for policing Cherokee County under the color and pretense of the federal and state laws as well as the ordinances, regulations, customs, and usages of the State of Georgia and Cherokee County.

12.     The actions of Defendant HOPSON that are the subject of this lawsuit were undertaken in the regular course of his employment as a deputy with the Cherokee County Sheriff's Office. Defendant HOPSON is sued in his individual capacity and is a resident and citizen of the State of Georgia and may be served with process at his personal place of residence: 222 Turner Ln., Woodstock, Georgia 30188-2519. Jurisdiction and venue are proper.

13.     Defendant, **ANGEL CORIOLLO-GUITERREZ**, (hereinafter "Defendant GUITERREZ"), at all relevant times herein, is and was a sworn deputy of the Cherokee County Sheriff's Office, assigned to the Cherokee Multi-Agency Narcotics Squad (sometimes referred to as "CMANS"). In his capacity as a law enforcement officer, Defendant GUITERREZ was responsible for policing Cherokee County under the color and pretense of the federal and state laws as well as the ordinances, regulations, customs, and usages of the State of Georgia and Cherokee County.

14.     The actions of Defendant GUITERREZ that are the subject of this lawsuit were undertaken in the regular course of his employment as a deputy with the Cherokee County Sheriff's Office. Defendant GUITERREZ is sued in his individual capacity and is a resident and citizen of the State of Georgia and may be served with process at his personal place of residence: 301 Downsby Ln., Woodstock, Georgia 30189-6349. Jurisdiction and venue are proper.

15.     Defendant, **EVAN J. PANKEY**, (hereinafter "Defendant PANKEY"), at all relevant times herein, is and was a sworn deputy of the Pickens County Sheriff's Office, assigned to the Cherokee Multi-Agency Narcotics Squad (sometimes referred to as "CMANS"). In his capacity as a law enforcement officer, Defendant PANKEY was responsible for policing Cherokee County under the color and pretense of the federal and state laws as well as the ordinances, regulations, customs, and usages of the State of Georgia and Cherokee County.

16.    The actions of Defendant PANKEY that are the subject of this lawsuit were undertaken in the regular course of his employment as a deputy with the Pickens County Sheriff's Office.  Defendant PANKEY is sued in his individual capacity and is a resident and citizen of the State of Georgia and may be served with process at his personal place of residence: 4542 Tails Creek Rd., Ellijay, Georgia 30540-2019. Jurisdiction and venue are proper.

17.    The mission of CMANS is to investigate the illegal sale, distribution and possession of controlled substances and other drug related activity throughout Cherokee County and to remove specifically targeted narcotics trafficking conspiracies and other illegal drug and violent crime activity from Cherokee County.

18.    The actions of Defendants, as described herein, violate clearly established statutory and constitutional rights of which reasonable officers would have known, including the legal justification require for the use of deadly force.  Further, the actions of Defendants allege in this lawsuit were willful, wanton, and reckless, and proximately caused the death of Reeves, for which Defendants are not entitled to qualified immunity.

## STATEMENT OF FACTS

19.    Plaintiffs hereby incorporates and re-allege each allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

20.    On June 13, 2022, Defendants were among numerous deputies assigned to CMANS that were involved in a drug operation targeting Reeves.

21.    During this drug operation, CMANS officers staged a drug deal between Reeves and an informant that was arranged to occur at a Walmart in Holly Springs, Georgia.  Reeves arrived on the scene driving a black BMW sport utility vehicle (SUV).  At some point, during his encounter with Defendants, Reeves attempted to flee from the scene in his vehicle.

22.    As Reeves was attempting to leave the scene in his vehicle, he initially backed into a CMANS vehicle that pulled up behind him to block him.  A second CMANS vehicle attempted to block Reeves from the front, but Reeves was able to avoid that vehicle, and sped away out of the parking lot.

23.    As Reeves was driving out of the parking lot, Defendants each began shooting into Reeve's vehicle, striking the vehicle multiple times from the back and passenger side, and discharging their weapons numerous times, even as the vehicle driven by Reeves was several car lengths away from Defendants.

24.    At no point during this incident did Reeves drive the BMW in a manner that demonstrated any intent or likelihood of causing death or serious injury to any of the Defendants, or any citizen bystanders within the vicinity.

25.    At no point during this incident did Reeves drive the BMW in a manner that could be reasonably perceived to Defendants to create the risk or likelihood of causing death or serious injury to any of the officers on the scene, or any citizen bystanders within the vicinity.

26.    At no point while Defendants were shooting into the BMW was any officer in

the direct path of the BMW such that they were facing an imminent threat of death or serious bodily injury or could not have otherwise taken reasonable steps to move out of the way of the BMW.

27.    At no point during this incident did Reeves make any threatening statements or gestures towards Defendants, or any bystanders on the scene.   Reeves also had no weapon on him, and Defendants had no reason to believe that he was armed and dangerous.

28.    The actions of Defendants firing numerous times into Reeves vehicle, even as it was several car lengths away, was not for the purpose of protecting any of the officers on the scene, or any civilian bystanders on the scene, but was for the purpose of stopping and arresting Reeves.

29.    The actions of Defendants shooting numerous times into the BMW, as Reeves was attempting to flee, was not for the purpose of self-defense or defense of others but was unreasonable and in violation of the Fourth Amendment of the United States Constitution, O.C.G.A. § 17-4-20, and the use of deadly force policies and guidelines of CMANS.

30.    There are eyewitnesses who witnessed this incident who reported they never saw Reeves drive his vehicle in a manner that posed a threat of death or serious bodily injury to any of the officers, or any bystanders on the scene.

31.    These are eyewitnesses who report having observed and heard over 20 shots being fired into and at the BMW as Reeves attempted to flee the scene, and even

after his vehicle was well beyond where the officers were located, and nowhere near any innocent bystanders.

32.    After being shot and crashing the BMW, Reeves was transported to the hospital where he was treated for multiple gunshot wounds to his right arm near his shoulder, right scapula, right armpit, and the opposite side of his right scapula. An autopsy was conducted on Reeves, and it was determined that his manner of death was due to a homicide and the cause of death was multiple gunshot wounds.

## FEDERAL CLAIMS

### COUNT - I

### EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT AND 42 U.S.C. § 1983

33.    Plaintiffs re-state and re-allege the preceding allegations of the Complaint as though fully set forth herein.

34.    Under the Fourth Amendment to the United States Constitution, Reeves had a constitutional right to be free from unreasonable seizures, which includes seizures accomplished by excessive force and unreasonable use of deadly force.

35.    Reeves was seized within the meaning of the Fourth Amendment when Defendants shot multiple times into his vehicle, which amounted to a "show of authority" with an "intent to retrain" that resulted in the "termination of [their] freedom of movement." See *Torres v. Madrid*, 141 S. Ct. 989, 1001 (2021).

36.    The Supreme Court has held that "the intrusiveness of a seizure by means of

deadly force is unmatched." *Tennessee v. Garner*, 471 U.S. 1, 9 (1985). An officer may use deadly force only if the officer has "probable cause to believe that the suspect poses a threat of serious bodily harm, either to the officer or to others." *Id.* at 11.

37.    When Defendants shot multiple times into the BMW, striking Reeves multiple times and causing his death, there was no probable cause or reasonable basis for Defendants to conclude that Reeves posed a threat of serious physical harm to him, or any of the officers' present on the scene.

38.    During the entire time Defendants were firing into the BMW, it was clear that Reeves was not attempting to use the BMW as a deadly weapon to assault or injure the officers but was attempting to flee and drive out of the parking lot.

39.    At the time of this incident, it was clearly established that using deadly force by shooting into a moving vehicle was unconstitutional and in violation of the Fourth Amendment where the facts show that the suspect was not attempting to use his vehicle as a deadly weapon and where no officers, or any others, were in the trajectory of the suspect's vehicle such that they faced an immediate threat of serious injury or death.

40.    During this incident, Defendants were acting under the color of Georgia state law and under the policies of CMANS when they employed deadly force upon Reeves by shooting numerous times into his vehicle.

41.    Defendants use of deadly force against Reeves was unreasonable and in

violation of the Fourth Amendment, because Reeves was unarmed and posed no imminent threat to Defendants, or anyone else.

42.     A reasonable law enforcement officer would have known that Defendants discharge of their weapons was objectively unreasonable and violated Reeves right to be free from unreasonable and excessive force.

43.     Defendants discharged their weapon for the purpose of attempting to disable the vehicle so that Reeves could be detained and arrested – and was not for the purpose of protecting any officer, or anyone else on the scene, from the risk of death or bodily harm.

44.     The actions of Defendants, as described herein, were done with malice, deliberate indifference, wantonness, and recklessness, and with callous and gross disregard for Reeves' statutory and constitutional rights.

45.     As a direct and proximate result of Defendants violation of Reeves' right to be free from unreasonable and excessive force, Reeves suffered physical and emotional injuries, and ultimately died from his gunshot injuries after several days in the hospital.

46.     As a direct and proximate result of Defendants violation of Reeves' statutory and constitutional rights to be free from unreasonable and excessive force, his estate is entitled to recover damages from Defendants for his medical expenses, physical and emotional pain and suffering, and the full value of Reeves' life, and all damages permissible under law.

## STATE LAW CLAIMS

### COUNT - II

### <u>WRONGFUL DEATH AND ESTATE DAMAGES</u>

47.     Plaintiffs re-state and re-allege the preceding allegations of the Complaint as though fully set forth herein.

48.        Under Georgia law, Defendants actions of shooting Reeves numerous times was intentional and without justification, with the tortuous actual intent to cause injury to Reeves and is not protected by official immunity.  <u>See</u> *Cantrell v. White*, 178 F. Supp. 3d 1308, 1318 (N.D. Ga. April 5, 2016).

49.     As the direct and proximate result of the joint and several actions of Defendants, as described above, Reeves was shot numerous times while driving his vehicle to flee from being arrested by Defendants.

50.     Under Georgia law, Plaintiffs are entitled to bring this wrongful death action for all general, special, and compensatory damages allowed under Georgia law. Plaintiffs are also entitled to bring estate claims against Defendants for all damages arising from the financial costs associated with the wrongful death of Reeves, including medical expenses, funeral and burial expenses, and damages for the pain and suffering experienced by Reeves prior to his death.

### COUNT - III

### <u>ASSAULT AND BATTERY</u>

51.     Plaintiffs re-state and re-allege the preceding allegations of the Complaint as

though fully set forth herein.

52.     Under Georgia law, O.C.G.A. §§ 51-1-13, "[a] a physical injury done to another shall give a right of action to the injured party, whatever may be the intention of the person causing the injury unless he is justified under some rule of law."

53.     Under Georgia law, O.C.G.A. §§ 51-1-14, "[a]ny violent injury or illegal attempt to commit a physical injury upon a person is a tort for which damages may be recovered."

54.     The unconstitutional and unnecessary use of deadly force by Defendants was without legal justification and therefore constitutes an aggravated assault and battery actionable under O.C.G.A. §§ 51-1-13 and 51-1-14, for which Defendants are liable to Plaintiffs for damages, including the physical and emotional pain and suffering experienced by Reeves, and the medical expenses incurred prior to his death.

## COUNT – IV

## **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

55.     Plaintiffs re-state and re-allege the preceding allegations of the Complaint as though fully set forth herein.

56.     Under Georgia law, a claim for intentional infliction of emotional distress exists where a defendant's conduct directed at a plaintiff is intentional or reckless, extreme, and outrageous, and causes a plaintiff to experience severe emotional distress. See *Kirkland v. Earth Fare, Inc.*, 289 Ga. App. 819 (2008).

57.     The actions of Defendants shooting at and into the vehicle being driven

by Reeves as he was attempting to flee from the parking lot to avoid being arrested, caused Reeves to experience severe emotional distress.

58.     The wrongful conduct and actions of Defendants, as described herein, were the proximate cause of Reeves experiencing severe emotional distress, for which Defendants are liable for damages under Georgia law.

## COUNT – V

## PUNITIVE DAMAGES

59.     Plaintiffs re-state and re-allege the preceding allegations of the Complaint as though fully set forth herein.

60.     Under Georgia law, O.C.G.A. § 51-12-5.1, punitive damages may be awarded in a tort action where there is clear and convincing evidence that a defendant's actions showed either willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

61.     As shown herein, Defendants maliciously and intentionally injured Reeves by shooting at and into his vehicle to prevent him from fleeing, and their conduct evidences a willful, wanton, and reckless disregard of Reeves' civil and constitutional rights and raise the presumption of conscious indifference to consequences.

62.     Based on the actions of Defendants towards the constitutional rights of Reeves, a jury would be authorized to award punitive damages to Plaintiffs against

Defendants to punish, penalize, or deter Defendants from future misconduct.

## COUNT - VI

## **ATTORNEY'S FEES**

63.    Plaintiffs re-state and re-allege the preceding allegations of the Complaint as though fully set forth herein.

64.    Pursuant to O.C.G.A. § 13-6-11, should Plaintiffs prevail in his state law claims against Defendants, a jury may award expenses of litigation where Defendants have acted in bad faith, been stubbornly litigious, and have caused Plaintiffs unnecessary trouble and expense.

Respectfully submitted,

/s/ Michael L. Wright
**Michael L. Wright (#557210)**
**WRIGHT & SCHULTE, LLC**
130 West Second Street, Suite 1600
Dayton, Ohio  45402
(937) 222-7477
(937) 222-7911 facsimile
mwright@yourohiolegalhelp.com